IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DONNA K. BAKER                                                    PLAINTIFF


        v.                          CIVIL NO.        2:10-CV-02135


MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                DEFENDANT

### MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff applied for a period of disability and disability insurance benefits, as well as supplemental security income benefits alleging disability based on herniated disks and arthritis of the spine and knees, and asthma, on August 8, 2007 (Tr. 130, 133, 184). Plaintiff was 46 years-old at the time of the Commissioner's final administrative decision, dated January 28, 2009 (Tr. 78-88). Plaintiff has a high school education and was attending technical college classes (Tr. 87).

Plaintiff's applications were denied initially and on reconsideration and she requested a

hearing before an ALJ (Tr. 89, 93, 96, 98, 102). The ALJ held a hearing in Fort Smith, Arkansas on September 23, 2008 (Tr. 11-73). The ALJ issued an unfavorable decision on January 28, 2009 (Tr. 78-88).

Plaintiff subsequently requested review from the Appeals Council (Tr. 8). On July 12, 2010, the Appeals Council declined review concluding that there was no basis to overturn the ALJ's final administrative decision (Tr. 1). Therefore, the Commissioner's administrative decision of January 28, 2009, became final. Plaintiff subsequently filed this claim.

## II.    Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one

year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III.   Applicable Facts

The Plaintiff first complained of back pain in 2005 (T. 348) and was treated at the Selah Medical Center for her back pain and other complaints until July 2006. (T. 350-359). Her treating physician in March 2005 felt that she was capable of light to medium work and was not a candidate for surgery. (T. 350). Her weight was 290 pounds and the Plaintiff sought a letter from

her doctor stating she needed to live in a downstairs apartment (T. 350) and a disabled parking permit which was denied. (T. 351). In April 2006 the medical chart indicated that the Plaintiff had full range of motion with no radiculopathy or neuropathy. (T. 357).

After the Plaintiff moved to Arkansas she was treated at the Charlston Clinic (264-275) and ultimately Plaintiff was referred to River Valley Musculoskeletal Center by Dr. Schmitz on April 23, 2007 with complaints of back pain. Dr. Hundley and Capocelli diagnosed the Plaintiff with thoracic pain, lumbago, sciatica, degenerative disc disease of the lumbar spine, and mild central canal narrowing. The initial plan was for the Plaintiff to receive physical therapy and prescribed Robaxin 500 mg four times per day and Lorcet7.5/500 every four to six hours as needed for pain. A myelogram was considered. (T. 235-237). Dr. Hundley saw the Plaintiff again on June 25, 2007 and the Plaintiff stated that the physical therapy did not result in any benefit. (T. 234). A cervical myelogram, thoracic myelogram and lumbar myelogram followed by a CT of cervical spine, CT of the Thoracic spine, and a CT of the lumbar spine was performed on July 25, 2007. (T. 240-244).

The Plaintiff returned to the River Valley Musculoskeletal Center on August 29, 2007 and Dr. Hundley noted that in "the thoracic spine there was noted some degenerative changes, most specifically seen at the T3/T4, T6/T7, T8/T9 and T9/T10 ans well as T10/T11". Dr. Hundley noted that the spinal canal and bilateral neuroforamen were patent (unobstructed) throughout. In the lumbar spine he noted the significant pathology was seen at L2/L3 where there is hypertrophy of the ligamentous flavum and facet joints as well as brod based disc herniation that accounts for some moderately sever spinal stenosis at that level Bilateral neuroforamen are patent at L3/L4. At L5/S1 he noted that there was a disc bulge with osteophyte

-4-

formation that is central and paracentral to the left and that there weas extrusion of disc materl into the left lateral recess that displaces the left exiting nerve root but that bilateral neuroforamen were patent at that level.  Dr. Hundley wanted the Plaintiff to meet with Dr. Capocelli to see if surgical intervention was called for. (T. 313).

Dr. Capocelli saw Plaintiff on February 19, 2008, wherein he noted that "[N]onoperative intervention has really resulted in significant improvement" and he did not recommend surgery at that time but instead chronic pain management to include injections, with a understanding that if her stenosis worsened, decompressive laminectomy would be considered but he stated that he would not "recommended it with the very mild disease she has right now."  (T. 314). He also ordered an additional MRI to rule out new disc herniation which was performed on March 1, 2008. The MRI showed that her condition was unchanged from December 2006. (T. 343).

An injection was administered on April 3, 2008 (T. 317), and the Plaintiff returned to RVMC on May 5, 2008.  She noted "dramatic reduction" of the burning type pain but that it only lasted for four days.  The Plaintiff was advised to lose weight and to quit smoking and another injection was scheduled (T. 318) which was administered on June 4, 2008. (T. 320).

APN Canada summarized Ms. Baker's course of treatment at RVMC  by letter report dated October 7, 2008. (T. 378-380). APN Canada concluded,

"At this point in time, we are going to follow Ms. Baker periodically. Her lumbar canal stenosis is quite severe and will most likely worsen through the years. At this point, she is not interested in any surgical intervention and is in hope that the periodic injections and pain medication will control her pain symptoms somewhat. We have tried to set Ms. Baker up with pain management centers for pain medication control but these facilities do require an up front

large amount of payment, which she is unable to come up with.

With her findings and chronic pain, I do feel that Ms. Baker is doing all that she can to control her pain and does continue to try to better herself by continuing her education." (T. 379-380).

It appears that the Plaintiff was seen at the RVMC again on April 1, 2009 when nurse Canada noted that the Plaintiff had a normal gait and her bilateral lower extremity strength was 5/5 with good motor function.  Upper extremity strength was 5/5 with good motor function.  She had a negative Hoffman sign, [1] and a negative Spurling sign. The Plaintiff stated to nurse Canada that she had been using the computer "four to six hours daily".  (T. 383).

A Physical RFC Assessment was performed by Dr. Ronald Crow on September 16, 2007.  Dr. Crow found that the Plaintiff could lift 20 pounds occasionally, 10 pounds frequently and that she could sit and stand and/or walk for 6 hours in an 8 hour work day.  He found no limitations on her ability to push and/or pull. (T. 297).  Dr. Crow also found no postural limitations. (T. 298).  Dr. Crow's opinion was reviewed and affirmed by Dr. Bill Payne on November 20, 2007. (T. 308).

On October 2, 2009 the Plaintiff saw William Ackerman, MD for her pain management.  Dr. Ackerman noted the Plaintiff was on Hydrocodone and Flexeril and that she was in college and had two more semesters prior to graduation. (T. 384).  Her weight was recorded at 265 pounds. (T. 385).  Dr. Ackerman noted normal movement of all extremities with no cyanosis, clubbing, or edema.  She exhibited severe tenderness to palpation over her lower lumbar facet

---

[1]  The Hoffmann sign is used by examiners assessing patients with symptoms of myelopathy (spinal cord compression).

joint but no tenderness to deep palpation of the musculature of the cervical, thoracic or lumbar spine.  Range of motion decrease with respect to extension of the lumbar spin but there was no joint tenderness in the sacral iliac joint. His plan was to have a CAT scan of her lumbar spine, facet injection, and maintain her on her hydrocodone and flexeril. (T. 386). Dr. Ackerman saw the Plaintiff again on October 30, 2009 and noted that there were no neurological changes. (T. 387).  Dr. Ackerman saw the Plaintiff again on December 30, 2009 and noted there was no change in the Plaintiff's medical condition. (T. 388).

**IV.    Discussion**:

The ALJ found that the Plaintiff met the insured status requirements through September 30, 2007; that she had not engaged in substantial gainful employment since September 25, 2006, the alleged onset date, and that she had severe impairments of degenerative disc disease, arthritis, and radiculopathy. (T. 83).

**A.  Physical Impairments:**

**1.  Asthma**

The Plaintiff listed Asthma as one of her conditions that limited her ability to work. (T. 184).   In January 2004 the Plaintiff was counseled concerning smoking cessation (T. 349).  The Plaintiff was instructed to  quite smoking by her treating physician on May 5, 2008. (T. 318-319). The Plaintiff continued to smoke throughout her medical records and on October 2, 2009 the Plaintiff reported that she continued to smoke one pack of cigarettes per day (T. 384).  In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir.2001), including failing to quit smoking.  *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th

-7-

Cir.1997). *Choate v. Barnhart* 457 F.3d 865, 872 (C.A.8 (Mo.),2006).

Regardless of the Plaintiff refusal or inability to quit smoking the ALJ took her asthma into consideration by imposing  restrictions in her RFC against exposure to extremes of weather and airborne irritants (Tr. 84-86)

### 2. Knees

The ALJ noted that the Plaintiff was treated for bilateral knee pain in December 2005 which she stated started "two weeks ago". (T. 353). Her ROM was limited by 4 degrees. (Id.). Medical test done on December 19, 2005 showed "minimal degenerative changes in the knees" (T. 367) and additional test performed January 13, 2006 showed "mild narrowing of the medial femoral tibial joint space". (T. 368).  It appears that the last treatment the Plaintiff received in relation to her knee pain was on February 22, 2006 when she was prescribed Mobic and Dapro, both of which are anti-inflammatory drugs. (T. 355).  The medical records do not show that the Plaintiff sought treatment for her knee pain after February 2006.   In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability").  Regardless**,** the ALJ  restricted the Plaintiff's RFC to only occasional pushing and/or  kneeling, crawling, and climbing (Tr. 84).

### 3.  Back Pain:

The court notes that the Plaintiff's current symptoms were basically the same in 2005 when her treating physician indicated she was capable of light too medium work and that she was not a candidate for surgery. (T. 350). After a DX Myelogram and CT scan (T. 240-244) her

treating physician referred her to Dr. Anthony Capocelli, M.D. an orthopedic specialist to see if surgery was recommended. (T. 313).  Dr. Capocelli did not recommend surgery due to the "very mild disease she has now." (T. 314).  All of the Plaintiff's treating physicians have continued to treat her conservatively with physical therapy, medication, weight reduction and physical exercise.  *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain). See *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir.1997) (concluding that, if an impairment can be controlled through treatment or medication, it cannot be considered disabling).  The fact that none of Plaintiff's doctors or other treating sources offered an opinion that she was disabled or made any statement or recommendation that she was unable to work at the substantial gainful activity level is legally significant evidence that an ALJ may consider. *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003); *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003).

The ALJ further found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926). (T. 84).  This finding is supported by the evidence and the Plaintiff does not contest the ALJ finding at this steps  but does contend that the ALJ's determination of her RFC was in error.

**B.  Residual Functional Capacity**

After considering the evidence of record, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform a range of sedentary work activity. The ALJ determined Plaintiff retained the RFC to perform sedentary work restricted to only occasional pushing and/or  kneeling, crawling, and climbing (Tr. 84). In addition, the ALJ found Plaintiff

limited to frequent grasping, handling and fingering bilaterally with her upper extremities, further restricted to jobs permitting a sit/stand at will option, and restrictions against exposure to extremes of weather and airborne irritants (Tr. 84-86). Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Jobs are sedentary if walking and standing are required only occasionally. See 20 C.F.R. §§ 404.1567(a), 404.967(a).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

The Plaintiff made numerous complaints of subjective pain.  In the Function Report filed August 21, 2007 the Plaintiff stated that her condition affected her lifting, standing, walking, sitting, stair-climbing, kneeling, squatting, reaching, using hands, seeing, bending, memory, concentration and completing tasks.  She stated she could only lift 10 pounds or less and stand less than 20 minutes.  (T. 178).  The Plaintiff testified that she could only sit for 10 minutes before she had to stand up (T. 33), and that her hands and feet go numb. (T. 32).

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints:  (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions.  *See id.*  The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.*  In the present case, the ALJ failed to acknowledge or discuss the factors in his credibility assessment of plaintiff.

**(1) the claimant's daily activities**;

In the Plaintiff's Function report dated August 21, 2007 the Plaintiff indicated that she had no difficulties with her personal care (T. 174),  prepared her own meals, did housework with the assistance of her daughter (T. 175).  She denied that she drove or shopped (T. 176) but that

she would read, watch TV and play games on her PC.  She also acknowledged that she goes to church two to three times per month. (T. 177).

The Plaintiff also testified on September 23, 2008 that she was attending school at Arkansas Tech University, Ozark campus. (T. 18).  The first semester she took five classes and attended five days per week, (T. 20), she took one summer session (T. 22) and she started out with five classes five days per week the second semester (T. 20) but had to drop a class because she no longer had a computer at her home and it was web based. (T. 19). The Plaintiff testified that she would attend class from nine in the morning until 11:50 and that she made A's and B's the first semester with a C in English. (T. 21).  On October 2, 2009 the Plaintiff told her pain doctor that she was in college and had two more semesters until graduation. (T. 384).The ability to attend college classes on a daily basis is inconsistent with disabling pain.

These activities are inconsistent with disabling pain.  *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).  Moreover, "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805. Cf. *Reed v. Barnhart*, 399 F.3d 917, 923-24 (8th Cir.2005).

-12-

**(2) the duration, frequency, and intensity of the pain**;

The Plaintiff acknowledged that she quite her job at K-Mart in 2006 to move to Arkansas to be near her family. (T. 52-53, 227). The Plaintiff acknowledged that she obtained another job after moving to Arkansas and worked at the Area Agency on Aging from October 2006 until May 2007. (T. 227, 142).  The Plaintiff testified she quite the job at Area Agency when "they told me they would not give me full time work because of my back and I could not live on six hours a week and try to take care of a home and a teenage child." (T. 54).  To have continued to work for the Area Agency on Aging the Plaintiff would have to have been able to lift more than 10 pounds. (T. 194). The ALJ also noted that the Plaintiff's complaints of disabling pain were inconsistent with her being a full time student. (T. 84-84).  The records also reflects that while the Plaintiff stated that she had difficulty walking the she reported to her doctor that she had to walk "a long distance while on campus" but that she had a roller back pack for her books. (T. 376).

Therefore, although it is clear that plaintiff suffers from some degree of pain and discomfort, she has not established that she is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir.2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).

**(3) dosage, effectiveness, and side effects of medication**;

At the time of her application for benefits on August 21, 2005 the Plaintiff reported that she was on Lorecet Plus 750 mg, one every four hours, Robaxon (muscle relaxant) 500 mg, one 3

x per day, and Albutrol 8.5 mg. 2 puffs per day.  (T. 182).  The Plaintiff stated that she did not

drive because the medicine made her sleepy. (T. 176).  On October 2, 2009 Dr. Ackerman, the

Plaintiff's pain management doctor, had her on Hydrocodone and Flexeril (muscle relaxant). The

Plaintiff did testify at the hearing that she was taking Gabapentin[2] and that pill that caused

drowsiness but that she took it at night. (T. 29). The ALJ discussed the fact that although Plaintiff

reported side-effects of medication, she continued to attend school suggesting the side-effects

were under control (Tr. 84-86). Indeed, Plaintiff's alleged side-effects did not prevent her from

working part-time during much of the time she alleges disability. The fact that Plaintiff

maintained her school attendance with the expectation of graduation, training as a medical

transcriptionist, appears to indicate a belief that she is capable of working and that she has a plan

to return to a different and new type of work once her studies are completed.

     The court notes also that on April 1, 2009 the medical notes at the RVMC stated that the

Plaintiff was not ready for any kind of surgery at this time and that she was maintaining her pain

with two hydrocodones daily. "The ALJ may properly consider both the claimant's willingness to

submit to treatment and the type of medication prescribed in order to determine the sincerity of

the claimant's allegations of pain." *Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir.1991)

(citations omitted) .*Gray v. Apfel* 192 F.3d 799, 804 (C.A.8 (S.D.),1999)

     **(4) precipitating and aggravating factors; and**

     There was no precipitating factor that caused the Plaintiff's condition but she alleged that

her disability occurred gradually.  The Plaintiff was diagnosed as morbidly obese as early as

_____

     [2] Gabapentin is an anti-epileptic medication, also called an anticonvulsant. It affects
chemicals and nerves in the body that are involved in the cause of seizures and some types of
pain. (See www.drugs.com  Viewed August 19, 2010).

2004. (T. 348). Social Security Ruling ("SSR") 00-3p, which states that obesity is a "medically

determinable impairment" that can constitute a severe impairment under Listing 12.05C, and

reminds adjudicators "to consider [obesity's] effects when evaluating disability." SSR

00-3p, 65 Fed. Reg. 31,039, 2000 WL 33952015 (May 15, 2000).   In January 2004 the Plaintiff

was counseled concerning smoking cessation (T. 349)  and she was told that her problem was her

weight (T. 349).  Her weight was 256 pounds in September 2003 (T. 347) which had increased to

282 pounds by February 2005. (T. 349).   The Plaintiff was instructed to reduce her weight and

start an exercise program and to quite smoking by her treating physician on May 5, 2008. (T.

318-319).   The Plaintiff continued to smoke and never lost any substantial weight.  On October

2, 2009 the Plaintiff reported that she continued to smoke one pack of cigarettes per day (T. 384)

and she weighed 265 pounds

The court recognizes that "[s]ignificant weight loss is indeed difficult even for the iron

willed.  For the less determined, who suffer from other painful and debilitating impairments that

restrict movement, and no doubt sap the resolve for self-improvement, such a significant loss of

weight may be impossible." *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987) (quoting *Scott v.

Heckler,* 770 F.2d at 486-87 (5th Cir.1985)).  It does not appear that the ALJ considered the

Plaintiff's failure to lose weight a major factor probably because  nothing in Plaintiff's medical

records indicates that a physician ever placed physical limitations on Plaintiff's ability to perform

work-related functions because of her obesity. *See Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir.

2004).

The Plaintiff never raised obesity as a basis for her disability. The fact that the plaintiff

did not allege obesity as a basis for her disability in her application for disability benefits is

-15-

significant, even if the evidence of obesity was later developed. See *Smith v. Shalala*, 987 F.2d

1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001). If there was

any error by the ALJ for the failure to address the issue of obesity the court finds that it was

harmless error.

      Questions of credibility are the province of the ALJ as trier of fact in the first instance.

*Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995)**.** The court defers to the ALJ's

credibility determination, especially where the testimony appears to indicate that plaintiff gave

contradictory answers. *Human v. Barnhart*, 2006 WL 2422182, 3 (D.Kan.) (D.Kan.,2006).

      It appears to the court that the ALJ properly considered and enunciated the Polaski factors

in the present case.

      The ALJ had a physical RFC assessment which limited the Plaintiff to occasionally lifting

20 pounds and frequently lifting 10 pounds and to sitting and standing and/or walking for 6 hours

in an 8 hour work day with normal breaks. (T. 297).  This RFC was performed by a non-

examining consultive physician. We have stated many times that the results of a one-time

medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base

his decision. See, e.g., *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion

of a consultative physician does not generally satisfy the substantial evidence requirement). *Cox

v. Barnhart*  345 F.3d 606, 610 (C.A.8 (Ark.),2003).  The ALJ noted that she considered the

opinion of the medical consultants but based upon the entire record she determined that the

Plaintiff was more restricted than determined by the medical consultant. This conclusion is

supported by the  myelogram and CT scans performed on July 25, 2007 (T. 240-244) which

establishes that the Plaintiff does have impairments of the spine but that all of her treating

physicians felt that the problems she had were "mild" and that surgery was not appropriate and she would be treated conservatively.  This was the opinion of her treating specialist, Dr. Capocelli. Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart*  393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527.

**C.  Newly Submitted Evidence:**

In the present case, plaintiff filed additional medical evidence with the Appeals Council, which was reviewed and considered prior to the issuance of the Council's determination.  When "a claimant files additional medical evidence with a request for review prior to the date of the [Commissioner's] final decision, the Appeals Council must consider the additional evidence if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Williams v. Sullivan*, 905 F.2d 214, 215-216 (8th Cir. 1990).  However, the timing of the evidence is not dispositive of whether the evidence is material. *Id.*  Evidence obtained after an ALJ decision is material if it related to the claimant's condition on or before the date of the ALJ's decision. *Basinger v. Heckler*, 725 F.29 1166, 1169 (8th Cir. 1984).

Once it is clear that the Appeals Council has considered newly submitted evidence, the court does not evaluate the Appeals Council's decision to deny review.  Instead, the court's role is limited to deciding whether the administrative law judge's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made. *See, e.g.*, *Nelson v. Sullivan,* 966 F.2d 363, 366 (8th Cir. 1992), and *Browning v. Sullivan,* 958 F.2d 817, 822 (8th Cir.1992).  Of necessity, that means we must

-17-

speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing.  We consider this to be a peculiar task for a reviewing court.  *See Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).

The Plaintiff saw Dr. Ackerman for pain management on October 2, 2009, October 30, 2009 and December 30, 2009.  There is nothing in Dr. Ackerman's records that would have caused the ALJ to alter her opinion since he provides no new medical evidence.

**V.      Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this August 22, 2011.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE